I understand we have a group of students from the Grace Mentoring group from Evanston that are here to observe the proceedings. I hope you enjoy it and pay attention to these lawyers. They know how to argue. Okay, we have one case on the call. 15 minutes for the appellant, 15 minutes for the appellee, 5 minutes in rebuttal. I don't use the timing lights, but believe me I'll hold you to your time. Let's just start watching the clock. Call the case please. Case number 13-3492, McCool v. Robert Gacho. Let's go, we have a lot. Good morning, your honors, counsel, may it please the court. My name is Brett Zeeb from the State Appellate Defender's Office and I represent Robert Gacho in this matter. I'm going to focus my argument this morning on the first claim, the judicial corruption claim, but I'll be happy to answer any questions the court has on the second issue. Almost 15 years ago, Judge Evans from the Seventh Circuit Court of Appeals in Boise v. Shomig noted that the ashes of Thomas Maloney's corruption still smoldered and he hoped that few, if any, of those embers would remain after he authored the decision in that case. Well, your honors, Robert Gacho's case is a remaining ember that this court needs to extinguish. The only way for this court to do that is to grant Mr. Gacho a new trial. The right to a third trial before an impartial judge means absolutely nothing if it is not a right that this court is willing to enforce. Mr. Zeeb, one of the hurdles you've got here is the standard of review because in the court below, Judge Cannon did grant an evidentiary hearing on this. Are you arguing that there should be a per se rule that no matter what happens at the third stage hearing that if we have these kinds of facts that it automatically requires a new trial? No, not at all, your honor. Our position is that the state failed to rebut the evidence that was presented at the evidentiary hearings. Excuse me, whose burden was it on the third stage evidentiary hearing? Yours or the state's? Well, if you look at Carderino, when that case was remanded, the court found that the evidence of the corruption was strong enough. Well, there's no question that there's evidence of pervasive corruption on the part of Judge Maloney. Where's your evidence that it took place in this case? It's in the form of the undisputed affidavits of saboteurs. Hearsay is insufficient to support relief at the third stage of an evidentiary hearing. It makes the second stage when it must be taken as true. But your allegation is no longer to be taken as true in the third stage of a post-conviction proceeding. The burden is upon you. And the only thing that I can see that you've produced is either hearsay or double hearsay. Well, your honor, it's not hearsay. It isn't? No, it's not hearsay. A bribe offer is not hearsay. A bribe offer is not hearsay. Excuse me, who's talking? It's the crime itself. Counsel, you're missing the point. Titone, or whatever his name was. Saboteur Titone. Titone's father gave an affidavit as to all sorts of things that were discussed between him and the attorney for his son. Is that affidavit hearsay? No, it's not. It's not? Well, one, Saboteur Titone is dead. So there's no way he could have been brought in to testify. You're not answering my question. You've got to answer my question. I'm answering your question. That's not hearsay. It isn't? No. Affidavit, this court, it's evidence. An affidavit is still evidence. They're saying that the statements within that are hearsay. You're not getting to the question as to whether it was hearsay. He said that he said that this happened is exactly what that affidavit says. Nothing more, nothing less. He did not communicate with Judge Maloney. He did not give evidence that he communicated with Judge Maloney. He communicated with someone who told him he communicated with Judge Maloney. And, by the way, he even gives an opinion that the bribe was never paid as one of the reasons why Judge Maloney sentenced his son to death. Is Your Honor questioning the existence of this bribe? Because this court has already acknowledged that the bribe was paid. This court has never acknowledged that the bribe was paid. In GOTCHA 1, which I wrote, we sent it back for an evidentiary hearing because the allegations in the petition and the supporting affidavits had to be taken as true at that stage. Now you have a different burden. The burden on the third stage was a burden of proof on your part. Your Honor, everyone who testifies to that affidavit are either dead or they have an absolute interest not to testify to it. Give me the best case that suggests that an affidavit that is pure hearsay is admissible in evidence merely because the affiant is dead. We're not conceding that the affidavit was pure hearsay. Well, I'm telling you, Counsel, it is. So now give me your best case that suggests that if it is hearsay, it is admissible in evidence at the third stage. Well, I don't have a case that says that when an affiant is dead that the evidence just comes in because they're dead. But what we have here is an affidavit from the father of the co-defendant that's very specific. There are two affidavits, one in 89, one in 1994, which detail this bribe that was paid to Thomas Maloney. It was a $10,000 bribe that was paid. It went through Mr. Roth. Counsel, stop, stop, stop, stop, stop. That's not what the affidavits say. Yes, it does. That is not what the affidavits say. Tell me what the affidavit says. Excuse me, Counsel. Don't, don't ever, ever start telling judges what to do while they're on the bench. It's unethical and it won't be tolerated. Understood. The claim was supported by the affidavit to Tony's father. He described a scheme pursuant to which his son's attorney would give a bribe to an intermediary who would then pass it to Maloney. The affidavit asserted that to Tony's lawyer told to Tony's father that as long as Maloney got the two out of three defendants, it would be enough. I think that's the exact quote. As long as the defendant and Sorrentino, meaning Gaccio, were found guilty, Maloney would get away with letting Tony go free. That's what's in the first affidavit. And that's part of a bribery scheme. Pure hearsay. It's hearsay that proves the bribery. It's not hearsay because that's the crime itself. At the very least, it's a declaration against penal interest. That's what the very bribe is. Declaration against penal interest by whom? By Roth. By Roth? Roth and the judge. This is the evidence of the bribe, which the Seventh Circuit has acknowledged, the Illinois Supreme Court has acknowledged that this bribe was paid in this case. Let me backtrack a few minutes. When you're talking about the burden, and I think Justice Hoffman correctly pointed out, why are we shifting the burden here, and you point out to the Seventh Circuit cases, but we don't have an Illinois case that says that the burden shifts. Do we? Well, even if the burden doesn't shift, it still meets the standard for the... Do you have your own answer? Yes. And that's because her decision, the circuit court judge Judge Cannon's decision, does not get to the actual substance of the affidavits or the evidence in the case. She merely did the same thing that this court said it could not do the last time around, and that was to hold that Mr. Gasho did not prove that he received a fair trial because, one, he was tried by a jury, and, two, because he couldn't point to any specific adverse rulings that Judge Gasho entered in the case. But as this court has acknowledged, looking to People v. Hawkins, which is the controlling law in this case, it doesn't matter that the jury heard the case. Maloney was still presided over the case. This was a simultaneous trial. It involved the same victims. It involved the same evidence and the same person, Thomas Maloney, presided over both proceedings. The state has already acknowledged that the bribe was paid in this case and that it tainted Dino Titone's case. If it tainted the co-defendant's case in this case, the same very case, there is no way that this court can hold, or it should not hold, that that taint did not also extend to Mr. Gasho's case. We have a case where the judge said, What was the holding in People v. Titone at the Supreme Court? What did the Supreme Court find in People v. Titone? I'm not sure. Well, your argument is that the Supreme Court found that a bribe was taken in this case. Hawkins. In People v. Titone, the Supreme Court affirmed the denial of the post-conviction relief because Titone had not proved that a bribe was taken. That was the Supreme Court in People v. Titone.  What year is that case, Your Honor? Counsel. We're not communicating here, but we have some questions. I'm flabbergasted and mystified that you're questioning that a bribe was paid. The State has conceded the bribe was paid. The Seventh Circuit and other courts have acknowledged this bribe was paid. The Supreme Court in Hawkins acknowledged the bribe was paid in this case. That's not even open to debate. Well, what the Supreme Court said in Titone in 1992, and I think we're just talking this out of here. That's pre-Hawkins. I'm sorry. Yeah, that's pre-Hawkins. No direct evidence was presented that Judge Maloney solicited, received, or agreed to accept a bribe to influence his decision in the defendant's case. That statement, which I quoted just directly, backs up to a reference to affidavits. And, you know, I think for us to grant you relief, don't we have to simply take judicial notice of things? Because, I mean, the affidavits are problematic, I think. I think in this case it's warranted just because of the history. The State's hands are not clean here. That decision predates Maloney being convicted in Operation Go-Lord and going to prison for 15 years. That's 92. So, again, there's no dispute that the bribe was paid. An evidentiary hearing was ordered in this case way back in, you know, a long time ago, in 1998, and it stalled for various reasons that this Court's aware of. In short, the State's hands are definitely not clean in that regard. I understand. Why did the State do wrong? Because it's taken so long, and now witnesses are dead. Salvatore Titone could have come in, if the evidentiary hearing would have took place then, and testified regarding the specifics of that affidavit. The State has had a chance since those affidavits to disprove them. They've not. Instead, they've acknowledged that the bribe occurred. They've already acknowledged it. I mean, the question before this Court, we're not saying that we didn't have to prove anything, but those affidavits are enough. The contents of those affidavits establish that the bribe was paid, and that part of the scheme was that when he took the $10,000, he gave it to the same bagman, McGee, that was used in other cases and involved the same corrupt attorney, Roth, who was convicted in the same Operation Greyloot investigation. This co-defendant, Titone, did get a new trial based on that evidence. So this Court would, in essence, be saying that where the State has acknowledged the bribe was paid to the very judge sitting in the case, and was convicted of that and sent to prison for 15 years, they acknowledge that it tainted Dino Titone's case. This Court would have to say that somehow that that taint did not extend to a co-defendant in a simultaneous trial involving the same witnesses, involving the same evidence, with the same judge, overlooking the entire proceeding. And that, in my opinion, is ridiculous. Do you have any further arguments? I'd just like to encourage this Court to grant a new trial to Mr. Gaucho because he deserves it. Now, do you want to tell me about your second issue? Mr. Gaucho claims that he was denied effective assistance of counsel because he was unaware until after the trial that his lawyer had represented a relative of Rosario and Feliz of one of the victims. Yes, Your Honor. Gaucho testified, and the records show that he was unaware that his attorney, Mr. McDonald, and if you read Bracey v. Schoemig, I'm sure the Court is aware of Mr. McDonald's history and his ties to organized crime and his various convictions and disbarments. He claimed that he was unaware that McDonald was simultaneously representing Mr. Gaucho in this very case and also another member of the Feliz family, Rosario and Feliz. He claimed that he was aware that prior to this case, Mr. McDonald was representing Tullio, oddly the victim in this case. Your Honor, by the way, it was odd to me to read that the petition for post-judgment relief and various petitions had been on file for 20 years and the first time Mr. Gaucho ever suggested that his attorney had represented the victim himself was at the hearing before Judge Cannon. Well, he didn't know, and the records back him up. Counsel, let me read you something. This is from the transcript of proceedings on September 19, 1984 before Mr. Gaucho's trial began. The Court, Mr. Gaucho, are you aware of all the circumstances that are being referred to and discussed now? Mr. Gaucho, yes, sir. The Court, have you discussed it with your attorney? Answer, yes. And you have no objection to whatever has occurred in the past regarding Mr. McDonald's representation of a family member of one of the victims. Defendant, no, I don't. The Court, and you wish him to continue as your lawyer, is that correct? Answer, yes. And the only evidence in this case that Mr. McDonald ever represented any relative of a victim was the fact that he had represented Rosario Infeliz from January 1984 through August 15, 1984. And you're going to tell me he wasn't aware until after the trial? That's Gaucho's testimony. And Judge Cannon didn't believe him. And I can understand why, reading the transcript. Well, it's clear that there's a disconnect between what Gaucho understood possibly before trial and after trial as far as who his attorney was representing. And I think the fact that McDonald, as the Seventh Circuit explained in detail regarding the connections between McDonald and Thomas Maloney as far as lawyering together and also their ties to Chicago organized crime, it definitely raises serious questions about what McDonald told Gaucho, if anything, about his ties to the Infeliz family. What were his ties to the Infeliz family? Do you know? Well, he represented Rosario Infeliz. And Mr. Gaucho knew about that before his trial began. Well, Gaucho testified to the contrary. Except the transcript suggests that he was told. And the only person that there's any evidence McDonald ever represented in the Infeliz family in this record is Rosario Infeliz on a matter that ended a month before your client was advised of the representation. That's the only evidence in this record. You've given us no other evidence of this attorney representing any other relative of Mr. Infeliz. Well, yet there's still evidence that there was simultaneous representation between McDonald and Gaucho was representing him at the same time as Rosario. And that's not one of the requirements per se. It's not a conflict of interest. It has to be a representation of the victim himself. Or an entity that would benefit. I'm arguing that the Rosario, the Infeliz family is an entity that would benefit from telling the Infeliz that Gaucho was guilty. That's exactly what the Hernandez Court rejected. The Supreme Court identifies three circumstances. Defense counsel has a prior contemporaneous association with the victim or the prosecution or an entity assisting in the prosecution where the defense counsel contemporaneously represents a prosecution witness and where defense counsel was a former prosecutor. None of the three are satisfied. Hernandez rejected the notion that there is an additional factor based upon benefit. They said that's the underlying reason for the three that they gave. And there is no evidence in this case of any kind. So McDonald represented the victim in this case prior to this case? Excuse me. She didn't believe him when he testified in that. There's no evidence he ever represented the victim. What case did he represent the victim on? You tell me. Well, that's, there's. Counsel, you have no case and you know it. Yeah, there's no case, but his testimony was that he did. That's what McDonald told him. Well, excuse me. How hard would it be for you to run the computers in the circuit court of Cook County or the circuit court in any other state or the federal court to determine whether Mr. Infeliz was a defendant in that case and whether he was represented by the attorney that represented Mr. Gottschalk? You're suggesting I add evidence to the record that was outside the record? No, I'm suggesting that you do the study when you had the post-conviction hearing and you made the allegation. I didn't represent Mr. Gottschalk at the post-conviction hearing. Well, somebody should have, and they didn't. And there is no evidence in this record, not a scintilla, that Mr. Gottschalk's attorney ever represented the victim in this case other than the testimony of Mr. Gottschalk himself, which Judge Cannon found incredible. Very well, Your Honor. This doesn't eliminate the fact that a bribe was paid to the judge in this case. Okay, counsel, we'll give you some rebuttal. State. May it please the Court. Good morning, Your Honors. John Walters for the people of the State of Illinois. Right off the get-go, I would like to say to Your Honors that it is not the people's intent here to defend Thomas Maloney. Thomas Maloney was a thoroughly despicable person, and he lives in infamy. And his lasting legacy is this body of case law that has developed to deal, to grapple with the very issues that this Court's grappling with. Well, Mr. Walters, that leads me into my first of several questions. All right, when you talk about the body of case law, which we all have up here, highlighted and tabbed and everything, in the earlier argument this morning, we had a discussion about the affidavits. Did the State object to those affidavits at the third stage evidentiary hearing? Initially, we must have, because the judge initially did not allow the affidavits. This is, by the way, the record request that you did object. I see this simultaneously. The judge ultimately reversed her evidentiary ruling on that point and allowed all of the affidavits to come in. Can I just say, too, that the act—I'm sorry, I just want to make this point clear. The act does allow, it does permit the submission of affidavits even at the third stage. What the act doesn't permit is an affidavit that contains hearsay. An affiant is allowed to testify in their affidavit to what's within their personal knowledge. But this Court, the First District Appellate Court, has said, I cited at least three cases to you, has said that hearsay in those affidavits is not admissible. The affiant is allowed to testify to their personal knowledge, not hearsay. So for purpose of this appeal that we are adjudicating today, does the State concede that Maloney was corrupt in this trial? By this trial, you mean Gaccio's trial? Well, I mean the proceeding at which both defendants were tried. Well, I think— It has to be distinguished. Gaccio's trial from a co-defendant Titone's trial has to be distinguished. So the State takes the position that if the judge is bribed as to one of two co-defendants, that does not taint the proceeding as to the second? Not necessarily. And the case law is abundantly clear on that point. Starting with Cartolino, which is recognized by our own Illinois Supreme Court in the case of Hawkins v. Fields. Hawkins v. Fields recognized Cartolino, discussed it at some length, noted that there was a major distinction in Hawkins v. Fields, which is also Maloney's case, from Cartolino. And that is this. Cartolino is almost dead on with this case. You have a non-bribing—there's two defendants that are tried simultaneously. One is a non-briber who takes a jury trial. The other is a bribing defendant who takes a bench trial. The bribing defendant is acquitted. Now, an appeal in the Seventh Circuit on federal habeas corpus, and this proceeding was very akin to where this case was at the last appeal. In other words, review of a sort of motion to dismiss, a dismissal stage proceeding, where no evidentiary hearing has taken place. The Seventh Circuit in Cartolino was clear that the mere fact, the mere fact that there was this allegation of a bribe in the other case was not sufficient to taint the non-briber's case. That evidence would have to be brought forward and established to demonstrate the important due process elements that have to be met here. And those due process elements are set out in yet another Maloney case that went to the United States Supreme Court, and that's Bracey v. Gramley. Even in a Maloney case before the United States Supreme Court, two elements have to be shown to show the due process violation. Either an actual bias on the part of the judge, or that the judge has a personal interest in the outcome of that petitioner's claim. And what the whole Bracey and Collins and Hooper federal habeas corpus litigation shows us is that even with respect to Maloney, the mere fact that he was actually biased against Bracey and Collins at sentencing did not mean that he was actually biased against them at their trial, and did not mean that he was actually biased against co-defendant Murray Hooper. Murray Hooper's cases were, at this point, they were affirmed. They were reversed under the laws of the Seventh Circuit. In this whole body of case law, emanating from this single judge? Yes. I'm going to give you a characterization and tell me if I'm wrong. That the federal side, when you talk about the Seventh Circuit, Judge Shader, and Chief Justice Rehnquist, in the case that went up to the U.S. Supreme Court, seem to suggest that this is so bad that there's a per se rule requiring a retrial. The Illinois Supreme Court has given us Hawkins and Fair two years apart. And they seem to be giving us a cautionary directive that we realize that we cannot overturn every single conviction entered by this judge because obviously he was not bribed in every single one of hundreds and hundreds and hundreds of cases that he presided over. So they come up with this nexus test. And the question I guess I'm getting to here is, is the nexus that we need to find that in fact his rulings were twisted so that they were contrary to what they normally would have been, absent the bribe? Or is the nexus simply that in the proceeding that was going on, he was bribed? There's a lot that you have to respond to. And the first point I want to make, and I don't mean to quibble with Your Honor, but the law is actually quite clear the opposite of what you stated. There is, in fact, no per se ruling. In fact, on remand from the United States Supreme Court, the Seventh Circuit has said repeatedly in the case of Bracey v. Shulman, U.S. ex-related Lucas v. Wellborn, in Dollar v. Sullivan, again and again, the Seventh Circuit and the Northern District of Illinois have said that the fact that Ramon was so exceedingly corrupt does not support a per se finding that every case over which he presided was infected. And I acknowledge that, and that's exactly what I think the Illinois court is going to say. He only took bribes in a small number of cases. So the question is, but nonetheless, other defendants who were tried before him used his corruption as a tool to try to overturn their convictions, and the court system said, stop. Which is very likely what happened in this case. The Gaucho's mother's affidavit is submitted in 1997 after Titone had already gotten post-conviction relief in the form of a new trial. So her affidavit comes 13 years after the fact of these alleged bribes in Gaucho's case. And then there's an aunt who submits an affidavit even four years after that. So clearly there's more than that, isn't there? I mean, maybe not in terms of the historical background of this particular trial. Well, with respect to Gaucho, no, Your Honor, there isn't. And that's the fundamental point. My question was with respect to the co-defendant. With respect to the co-defendant. There's a paper trail a mile long, isn't there? There was a federal Hades Corpus proceeding which ultimately granted him relief. It went back to state post-conviction. And he ultimately was granted post-conviction relief and a new trial. But in that case, apparently it was not presented here at this evidentiary hearing, but apparently there was evidence that suggested at least that Maloney either had an interest in the outcome or was actually biased. Mr. Walters, one of the things we do around here a lot is we're trying to read the teen leaves from the 20th floor. All right? Which means we have to follow the Illinois Supreme Court in lockstep as opposed to simply allowing the federal judges to give us suggestions. And I'm looking at the earlier case, which was Hawkins. Okay? And the lower court judge was Judge Newling. And it appears what she did was at the second stage found that there was, you know, enough that she simply bypassed the third stage and said, I'm giving you a new trial. That went up, and Justice McGraw wrote an opinion for the Supreme Court actually affirming that. How is that different than what we have here? Other than this, you know, the previous panel on this particular case decided to send it for a third stage rather than do what Judge Newling did, which was, you know, pull the plug and just say you did a retrial right now. It's totally distinguishable on the key fact, which is did Maloney have a personal interest in the outcome of that case? The evidence there was that he did. What was the evidence in Hawkins? Both Hawkins and Fields belonged to the same gang. That gang paid a bribe to Maloney. So the Supreme Court found that the logic was inexorable. In other words, the logic was inexorable that that bribe paid by both defendants' gang was meant to benefit both defendants. So Maloney clearly had a personal interest in the outcome of both cases. I want to delve even further into Hawkins. I agree with you. We're bound by the Illinois Supreme Court. I think it is extremely compelling. I understand that Seventh Circuit case law is not binding on this court. It can be persuasive. But what happens when the Illinois Supreme Court appears to adopt Seventh Circuit case law as it did in Hawkins v. Fields? In that case, the Supreme Court recognized Cartolino, this case that I mentioned before that is similarly on all fours with our case. The only thing I would say is Cartolino might be a stronger case because in that case there was clear evidence of the bribe because the bribing defendant in that case was actually acquitted in his bench trial before the corrupt judge. I think it was possibly Judge Pompey. So the point is in Hawkins v. Fields they took pains to distinguish. Judge Dooling especially took pains to distinguish the case before her where the co-defendants are clearly benefiting and Judge Maloney clearly has a personal interest in the outcome of both of their cases from the case at hand. I have a question based on Fair. Fair suggests that a defendant who alleges that his trial judge's corruption violates his rights to a fair trial must establish two things. A nexus between the judge's corruption or criminal conduct in other cases and the judge's conduct in the trial. And actual bias resulting from the judge's extrajudicial conduct. Now assume for a minute that we establish the nexus. What evidence is there in the record of actual corruption in this trial? With respect to God so known, Your Honor. That's the point. Now Judge Cannon conducted a thorough search of the record and actually placed in the order that she was unable to find a single questionable ruling that went against Godshoe during the trial of this cause. And he was found guilty by a jury. Is it your contention that absent evidence of actual bias on the part of the judge versus Godshoe, some form of evidence, I take it other than hearsay, that he cannot gain relief in this case? Absolutely, Your Honor. Absolutely. And that's based on a case law, this abundant body case law that I've cited to you. Even in Bracey versus Gramley, even where they did the exact same thing that Judge Cannon did in this case. They reviewed the record, looked at the evidentiary rulings. I cited to you at length, I went through the Illinois Supreme Court's ruling in People versus Godshoe on direct review of Godshoe's trial. And the Illinois Supreme Court went through. It was a death penalty case. There were multiple issues raised. And issue after issue, the court found that there was no improper ruling. And in fact, in several cases, the judge only acted to cure error in that case. Couldn't that just be covering his tracks? And there's some suggestion of that in some of the case law. That's just compensatory bias. Even assuming an argument that that's the case, where is the evidence? Where is the evidence to show actual bias? Is the state arguing to us that if two defendants go to trial for the same criminal incident, and one defendant bribes the judge, the second defendant gets found guilty by a jury, and there's nothing in the record that the judge said something was hearsay or not. There's no particular ruling by the judge. The second defendant just doesn't get a do-over after he finds out the judge was bribed as to the co-defendant. Yes, based on Carlino. Based on the Murray Hooper and Bracey and Collins litigation. Yes, absolutely. Maloney could compartmentalize. If the Bracey and Collins and Hooper litigation doesn't demonstrate anything else, it demonstrates that even in the same proceeding involving the same defendants, he could at times be actually biased, and at times not be. Against the same defendants in the same proceeding, Carlino is the same thing. It's actually not a Judge Maloney case to my recollection. I think, again, it's Judge Pompei. But, again, the same point is illustrated. It is not sufficient to show that something went on with the co-defendant. Some evidence has to be shown to make this due process violation clear. Robert Gottschall received a fair trial. At the end of the day, Robert Gottschall received a fair trial. But what the Supreme Court said in Hawkins was, you know, the defendants in that need not show actual bias, but it's a fair effect to be granted a new trial. And I'm skipping a few words. To perform its high function in the best way, justice must satisfy the appearance of justice. And I think that's where the defendant is headed here in terms of arguing, well, maybe I can't point to some, you know, on page 72 of the transcript, he barred this, you know, key witness who would have saved me. All right? We don't have that here. We don't know that. But isn't this sort of almost like a holistic situation where we simply have to say, you know, this was so bad and so tainted we have to do it over? We can't look at Hawkins and Fields without looking at the fact that what was established there was a personal interest, that Maloney had a personal interest in both defendants' cases. And that is a fairly distinguishable point from here. That's the key point. Hold on one second. Because if the affidavits were proper evidence and could be considered even though they were hearsay, the affidavit of the co-defendant's father would establish an interest on the part of Mr. Maloney in relation to Gaccio's case because he indicates that the agreement was that he would find, Mr. Gaccio would be found guilty and sentenced to death and then the co-defendant would be found not guilty in the bench trial. So I think a lot of this argument relating to whether there was a benefit to Mr. Maloney in the Gaccio case relies on the admissibility of the hearsay affidavit of the detainee's father. So is it valid evidence or is it not? It's not, Your Honor, and here's why. In a nutshell, the whole point that you just brought out doesn't come from Salvatore Titone. It is in the words of Bruce Roth. Bruce Roth wasn't called to testify at this evidentiary hearing. His statements to Salvatore Titone are hearsay. And beyond the mere fact that it's inadmissible hearsay, Bruce Roth is probably a good thing that he was not called to testify because any attorney with the opportunity to cross-examine Bruce Roth would have a field day. This was an individual who suborned perjury, who forged documents before the court. I don't know what his current status is before the ARDC. He used cocaine with his clients. I'm not concerned about that. I'm concerned about the question. If the hearsay, and actually I suppose it's a double hearsay, because Roth told Titone's father what Roth was told, if that is admissible, if it were admissible, wouldn't it establish the interest that Maloney had in the outcome of the gotcha case? In fact, that's what we said in the prior decision that we issued if we accepted the affidavits as true. Trying to answer that as best I can, if there were credible evidence that Judge Maloney had a personal interest in the outcome of Gotcho's case, then that would satisfy the requirements of due process. That's not this case. Again, I don't want to quibble with Your Honor, but it's not even clear to me whether Roth is repeating something that supposedly Maloney said to him, or is it that he's doing a sales job on Salvatore Titone, hey, don't worry, this deal is going to go through. Don't worry, because he's going to get two out of three. So your $10,000 is money well spent. It's not clear from the snippet that we have of double hearsay whether he's repeating something that he actually heard from Maloney, or whether this is from the fertile and very corrupt imagination of Bruce Roth. It's just not, there's no evidence either way. Again, it's double hearsay. Okay, and I take it on the second issue that they raised on appeal, you believe he was adequately informed in the way of any possible conflict, based on contents of the transcript. Based not only, Your Honor, on the contents of the waiver that was done, I don't want to belabor the point. I know from experience that this Court reads the brief, so I just want to make one quick point about the facts. One of the claims that Robert Gatcho makes is that somehow his attorney, Mr. McDonald, was still representing Rosario Infeliz, even during dependency of his trial. And yet, hard documentary evidence in the form of the clerk's records in the case of Rosario Infeliz showed that the trial for all purposes was over in August, August 15, and that McDonald cashed out in that case. The bond was refunded to him at 26th Street. When the attorneys receive the bond, they're done with the case. And in fact, Alan Ackerman, well-known appellate attorney, is known to be attorney of record in Rosario's appeals. So there's no possible way, and that's just one of myriad illustrations I put in my brief, don't want to belabor the point, of how Gatcho's and Barrow's testimony was thoroughly unbelievable and how Judge Cannon's findings in this case cannot possibly be against the manifest way of the evidence. There is no way on this record. Counsel, thank you. Thank you. Mr. Barrow. Your Honor, I'll be as brief as I can. First, Your Honor, Justice Hoffman, I apologize for interrupting you and my gruffness in my opening argument. If this Court adopts the State's view of the Illinois Supreme Court's view of Hawkins, this Court would be overturning Hawkins. Hawkins clearly says that a defendant does not have to prove actual bias if he can prove that the trial judge had a personal interest in the outcome of the trial. And that inquiry is whether the judge could have been tempted to not hold the balance between the parties nice, clear, and true. That's the buzz phrase. In this case, Maloney had a personal interest in the outcome of this case. To cover up his own corruption, Maloney had an interest in the outcome of this case. I think it's notable that Titone was in fact convicted in this case despite Maloney being bribed because there's evidence based on the history of Maloney that he knew he was being investigated in Operation Greylord. He knew the feds were onto him. So in some cases, and this is where the whole concept of compensatory bias comes in, and I also think that counsel's portrayal of Cardamone versus Washington is not entirely accurate. That was an en banc decision, and it was varied. It was what? Well, the majority did agree that, I'm sorry, I'm talking about Bracey. Let me backtrack. In Cardamone, though, it was a similar factual situation where we have one defendant who took a bench trial, paid a bribe, and was acquitted, and then we have a co-defendant who did not bribe the judge and was convicted by a jury. But actually the court found that the evidence was very strong that there was bias as to the co-defendant who did not bribe the judge. And, in fact, the only reason it was remanded because there was an incomplete record, and that's where the court in Cardamone did shift the burden to the state then to show that there was a bias that the judge exhibited against the co-defendant in the case. And the court says the circumstances of the case were very close to the point at which remand for an evidentiary hearing would have been pointless because the evidence was so strong. We've got the same evidence here. We have the same situation where it's known, and it has not been disputed by the state, they conceded in their briefs and below when this case was here three years ago that the bribe was paid and that it tainted to Tony's trial. The very fact that that bribe was paid and that these cases are intertwined, again, we're not talking about a defendant who says, well, I was convicted by Judge Maloney in a murder case, and I know he took bribes, so I need a new trial. This is the same case. It's the same judge. It's the same evidence. It's the same murder victims. They're inextricably intertwined. To say that Gaccio's case was not tainted, that's incredible. That would be an incredible conclusion. The Act does allow affidavits. People die. People have been convicted based on dying declarations. I mean, the state had their chance to discredit Salvatore Titone's affidavit. They had a chance to discredit whether Roth accepted the bribe and gave it to McGee, the bag man. It's never been disputed. Judge Cannon didn't dispute it. She allowed these affidavits from Salvatore Titone into evidence. Mr. Gaccio deserves a new trial. Thank you. Thank you. Counselors, thank you. The matter will be taken under advisement. Judge Rockford will participate in the disposition of this case and will have the briefs or the – pardon me, the tapes of the oral argument at her disposal. Thank you very much. Court is adjourned.